IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE | ) | |
| COMPANY, as subrogee of THE | ) | |
| VILLAGE AT ORCHARD RIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:14–cv–00018 |
| | ) | |
| HELP U MOVE, LLC, d/b/a HELP U | ) | By: Elizabeth K. Dillon |
| MOVE, INC., | ) | United States District Judge |
| | ) | |
| and | ) | |
| | ) | |
| PHYLLIS H. BAKER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

On April 11, 2013, defendant Phyllis H. Baker,[1] with the assistance of defendant Help U

Move, LLC, moved her belongings into a new apartment at The Village at Orchard Ridge, a

multi-unit assisted-living community in Winchester, Virginia. That night, roughly two hours

after she and the movers had left for the day, two cardboard boxes lying on the stove caught fire.

Though small, the fire set off the fire alarm and sprinkler system. The water extinguished the

fire but damaged the apartment and surrounding area.

Orchard Ridge's insurer, plaintiff Hartford Fire Insurance Company, paid more than

$290,000 to repair the water damage. Seeking to recover that money as Orchard Ridge's

subrogee, Hartford brings this action against Baker and Help U Move, alleging that they were

negligent and that their negligence caused the fire. Baker now moves for summary judgment

---

[1] In Hartford's complaint and other filings, Baker's first name is incorrectly spelled "Phyliss." (*E.g.*, Dkt.
No. 1, Compl. ¶¶ 3, 9.) The court corrected the misspelling by order on June 25, 2015. (Dkt. No. 56, Order.) It
accordingly uses the correct spelling—"Phyllis"—here.

under Federal Rule of Civil Procedure 56, contending that there is no evidence that she was negligent, much less that her negligence caused the fire.

For the following reasons, the court holds that there is no genuine dispute as to any material fact and that Baker is entitled to judgment as a matter of law. It will therefore grant her motion and enter judgment in her favor.

## I. BACKGROUND

### A. Baker decides to move to Orchard Ridge.

In or around 2013, after the death of her husband, Baker, then in her early 80s, decided to sell her longtime home in Winchester and move into an assisted-living community. (Dkt. No. 48, Baker's Mem. in Supp. of Mot. for Summ. J. 2; Dkt. No. 48–4, Baker Dep. 6, 12, May 7, 2015.)[2] She ultimately settled on Orchard Ridge, a then-new assisted-living community comprising a main building and 50-plus smaller buildings. (Dkt. No. 48–1, Bradshaw Dep. 13–14, May 13, 2015.) The main building contains 127 apartments divided into seven areas (A through G). (*Id.* at 14, 16.) Baker selected a one-bedroom apartment (Unit 335) in Area E and put down a deposit. (*Id.* at 15, 48.)

At the time of Baker's decision, some of the areas in the main building were occupied but others—including Area E—were still in various stages of construction. (*Id.* at 13, 23.) Howard Shockey & Sons, Inc., was the general contractor, and ARCH Consultants, Ltd., was the project manager. (*Id.* at 24.) An estimated 500 workers were on site when construction was in full swing. (*Id.* at 26.)

---

[2] The facts recited in this section and relied upon below are derived from exhibits (Dkt. Nos. 48–1 through 48–6) attached to Baker's supporting memorandum. Although Hartford denies a few of Baker's assertions of fact or inferences that could be made from undisputed facts in its opposing memorandum (*see* Dkt. No. 51, Hartford's Mem. in Opp'n to Baker's Mot. for Summ. J. 2–7), it has not produced any materials to support its denials. The court thus considers the facts undisputed for purposes of Baker's motion, in accordance with Federal Rule of Civil Procedure 56(e)(2).

2

**B. Help U Move packs and moves Baker's belongings to Orchard Ridge.**

Sometime in early 2013, Baker hired Help U Move, a moving company based in Winchester (Dkt. No. 1, Compl. ¶ 2), to pack and move her belongings from her house to Orchard Ridge. (Dkt. No. 48–4 at 15.) Orchard Ridge initially told Baker that her move-in date would be April 11, 2013, and so she arranged to have Help U Move pack and move her belongings to Unit 335 on or around that date. (*Id.* at 15–16, 22.) Sometime before April 11, though, Orchard Ridge informed Baker that she could not move in on that date because it had not yet received a certificate of occupancy for the unit. (Dkt. No. 48–1 at 29–30, 36.) But after receiving "verbal approval" from the fire marshal, Orchard Ridge agreed to "provide [Baker] access [on April 11] to put her boxes and her possessions in the unit prior to her moving in." (*Id.* at 34; *see also* Dkt. No. 48–4 at 22.)

So on April 10, two or more Help U Move employees arrived at Baker's house to pack her belongings and load them onto a truck. (Dkt. No. 48–4 at 17–19.) The employees "packed all the big furniture first" and put it on the truck. (*Id.* at 18–19.) They then packed all of Baker's remaining belongings into cardboard boxes and loaded the boxes onto the truck. (*Id.* at 16, 19.) Baker did not pack or move any of the boxes. (*Id.* at 16; *see also* Dkt No. 48–5, Oliver, Cook, and Pitcock Affs. 1–3.)

The next day, April 11, the employees drove Baker's belongings to Orchard Ridge. (Dkt. No. 48–4 at 17.) Baker met them there between 10 and 11 a.m. so that she could show them where to place the furniture inside Unit 335, which is on the third floor. (*Id.* at 17–18; Dkt. No. 48–5 at 1–3.) Since Baker did not yet have a keycard to the unit,[3] Orchard Ridge arranged to have Shockey unlock the unit before she and the employees arrived. (Dkt. No. 48–1 at 35; Dkt.

---

[3] Like many hotel rooms, the units in Orchard Ridge's main building have "electronic locks" that use keycards instead of metal keys. (Dkt. No. 48–1, Bradshaw Dep. 33, 68, May 13, 2015.)

3

No. 48–4 at 21–22.)  The employees first unloaded the boxes and moved them into the unit.
(Dkt. No. 48–4 at 18, 26.)  There were between 20 and 30 boxes of "all sizes."  (*Id.* at 18.)  The
employees stacked them in the center of the kitchen.  (*Id.* at 27–28.)  Baker did not tell the
employees to place the boxes there; rather, they made that decision on their own, apparently to
give themselves "room to get the furniture in."  (*Id.* at 19.)

Next, the employees unloaded and moved the furniture into Unit 335.  (*Id.* at 18, 26.)  As
they brought in each piece, Baker would "let them know where to put [it]."  (*Id.* at 18.)  Once the
employees had placed all of the furniture, they went into the kitchen and cut open some of the
boxes so that it would be easier for Baker to unpack them later.  (*Id.* at 31.)  The employees and
Baker then decided to quit for the day.  (*Id.* at 34.)  They left together around 6 p.m.  (*Id.* at 24;
Dkt. No. 48–5 at 1–3.)  The unit was unlocked when they left.  (Dkt. No. 48–4 at 21–22.)

Baker was not the only resident moving her belongings into a unit in Area E on April 11.
Orchard Ridge had given permission to other residents as well.  (Dkt. No. 48–1 at 44–45; *see
also* Dkt. 48–4 at 20–21.)  With multiple residents moving in at the same time, "the elevators
were very backed up."  (Dkt. No. 48–4 at 21.)  As a result, Baker's move took "a little longer
than it might have."  (*Id.* at 20.)

**C. Boxes in Unit 335 catch fire and set off the fire alarm and sprinkler system.**

Around 8:45 p.m. on April 11, a fire alarm in Orchard Ridge's main building began to
sound, and so the local fire department sent an engine company to the community.  (Dkt. No.
48–6, Frederick County Fire and Rescue Department, Office of the Fire Marshall, Supplemental
Investigation Report 1, Apr. 16, 2013.)[4]  While en route, the firefighters received a call from

---

[4] The copy of the fire department's report attached to Baker's supporting memorandum is unauthenticated.
Generally, to be admissible on summary judgment, "documents must be authenticated by and attached to an
affidavit that meets the requirements of Rule 56(e)."  *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) (quoting
10A Charles A. Wright *et al.*, *Federal Practice and Procedure* § 2722, at 58–60 (1983 & Supp. 1993)).  Hartford

4

dispatch notifying them of a possible fire in Unit 335. (*Id.*) Upon arriving at the main building, the firefighters first confirmed the location of the active fire alarm and then proceeded to the unit. (*Id.*) As they made their way up to the third floor, they "observed the evacuation of all occupants being conducted." (*Id.*)

With the help of Orchard Ridge's security personnel, the firefighters reached the unit. (*Id.*) Once inside, one of them saw that a "sprinkler head had activated in the kitchen ceiling." (*Id.*) He also noticed that there was "light smoke evacuating [the kitchen] via the entryway between the bulkhead and the sprinkler head's water column." (*Id.*) In the kitchen, he "discovered a large area of moving boxes . . . with two of them sitting on the glass range top." (*Id.*) After gaining access to the stove, he saw that the boxes "had varying degrees of char and that the left two burners were in the on position with a red indicator illuminated." (*Id.*) He "turned both burners to the off position and removed the cardboard boxes from [the] ignition source." (*Id.*) He then confirmed that the fire on the boxes was out and "secured the water flow to the affected areas." (*Id.*)

While the water extinguished the fire, it damaged the unit and surrounding area. (*Id.*; Dkt. No. 48–1 at 17.) As Orchard Ridge's insurer, Hartford paid more than $290,000 to repair the water damage. (Dkt. No. 1, ¶ 14.)

## D. Hartford sues Baker and Help U Move.

In May 2014, Hartford, as Orchard Ridge's subrogee, filed this action against Baker and Help U Move, seeking to recover the money that it paid to repair the water damage to Unit 335 and surrounding area. (Dkt. No. 1, ¶ 14.) As to Baker, Hartford alleges that she, "directly and

---

does not, however, object to the admission of the report. Quite the contrary. It, too, invites the court to consider the report. (*See* Dkt. No. 51 at 6, 11–14.) And for good reason: without the report, there would be *no* evidence in the summary judgment record as to the origin of the fire. Admission of the report, then, would be to Hartford's *benefit*, not detriment. The court therefore admits the report and considers it for purposes of Baker's motion, in spite of the lack of authentication.

by and through her agents and/or representatives," was negligent in failing to (1) "secure the premises against a foreseeable risk of danger prior to leaving [the unit]"; (2) "maintain the subject premises in a safe and reasonable condition"; (3) "properly supervise and/or direct Help U Move employees unloading boxes into the residence"; and (4) "use due care under the circumstances." (*Id.* ¶ 21.) Hartford further alleges that, "[a]s a direct and proximate result of . . . Baker's negligence, Orchard Ridge sustained damages." (*Id.* ¶ 22.)

Baker answered, denying these allegations (Dkt. No. 5, Baker's Answer ¶ 18), and discovery followed. At her deposition, Baker testified that she did not enter the kitchen "at any time" on April 11, 2013. (Dkt. No. 48–4 at 26.) She further testified that she did not see any boxes on top of the kitchen counters or appliances, and that she "would have noticed that" because she was "trying to take good care of everything." (*Id.* at 28.) She only saw "boxes on boxes" in the middle of the kitchen. (*Id.*) So it would "[a]bsolutely" surprise her to learn that a firefighter found two boxes on the stove. (*Id.* at 29, 31.)

Baker also testified that she does not know what the "electric situation" in Unit 335 was on April 11. (*Id.* at 22.)[5] She did not attempt to plug anything in, and she does not recall whether the lights were on. (*Id.* at 23.) Before leaving for the day, she "took a last look" in the bedroom, living room, and den, but not in the kitchen. (*Id.* at 35.) There was "nothing for [her] to check in the kitchen," she explained, "because the boxes were there." (*Id.* at 35.) When asked whether, "in her previous residence, [she] ever [made] sure that all the appliances [were] turned off," she replied: "Well, of course. Of course." (*Id.* at 25.) And she added that she "currently . . . check[s] all the appliances to make sure they're turned off." (*Id.*) Indeed, she does not even "leave a light bulb burning when [she is] not there." (*Id.*)

---

[5] There is no evidence in the summary judgment record that Unit 335 had electricity during the time that Baker and the Help U Move employees were inside the unit on April 11, 2013.

6

She further testified that there were residents living in Orchard Ridge's main building on April 11 and that she saw some of them that afternoon when she went down to the community's bistro to grab a sandwich. (*Id.* at 45–46.) In addition, she saw cars in the parking lot when she arrived in the morning and when she left in the evening. (*Id.* at 46–47.) She does not know, however, whether there were any residents living on her floor at that time. (*Id.* at 47, 49.) With the exception of the Help U Move employees, she did not see anyone in the hallway outside Unit 335 during the move (*id.* at 41), though she was "inside most of the time" (*id.* at 21). Nor did she see anyone other than the Help U Move employees enter the unit. (*Id.* at 41.)

Orchard Ridge's corporate designee, Lawrence Bradshaw, was also deposed. He testified that there were no residents occupying units in Area E on April 11, because Orchard Ridge had not yet received the necessary certificates of occupancy. (Dkt. No. 48–1 at 18, 44.) The units were still undergoing "inspections and corrections per the inspection . . . on that date." (*Id.* at 23.) Shockey "would have definitely been" there handling the inspections and corrections, and ARCH was "probably there," too. (*Id.* at 23–24; *see also id.* at 70–71.) Final inspections were scheduled for April 12, and Orchard Ridge "anticipated receiving the certificate[s] of occupancy on that day." (*Id.* at 32.)

Bradshaw also testified that Orchard Ridge did not take possession of a unit until a certificate of occupancy had been issued. (*Id.* at 28.) On April 11, then, Shockey was in possession of Unit 335 and all other units in Area E. (*See id.* at 28–29.) It was thus responsible on that date "for assuring people couldn't get in and locking down any units" in the area. (*Id.* at 29.) According to Bradshaw, "Shockey was not locking everything down during the day so [that it] could have [its] housekeeping staff and maintenance staff in there. But . . . at night [its]

7

normal process was to lock down every unit." (*Id.* at 33.) Shockey was in charge of cleaning and maintaining a unit until it was turned over to Orchard Ridge. (*Id.* at 69.)

Bradshaw further testified that, because Orchard Ridge did not have possession of the units in Area E on April 11, it did not have keycards to them on that date. (*Id.* at 33–35.) So Bradshaw "imagine[s]" that "Shockey was notified that [Baker] was coming in [Unit] 335 and [Shockey] opened the unit [on April 11] and then secured it later that evening." (*Id.* at 35.)[6] Units in other parts of the main building can be left unlocked by pressing "a button on the inside of the door." (*Id.* at 68.) But Bradshaw does not know whether Unit 335 "specifically" has this feature. (*Id.*)[7]

As for the stove in Unit 335, Bradshaw testified that he does not know who installed it, but he thinks that "[i]t would have been [a] subcontractor . . . hired by Shockey." (*Id.* at 40.) He also does not know whether the stove had been tested as of April 11, but he "imagine[s] that, as the units were being installed, . . . there [was] testing done to make sure that they worked properly." (*Id.* at 41.)

Bradshaw further testified that, while Baker had permission to place her belongings in Unit 335 on April 11, she "did not have the right to occupy, use, or otherwise enjoy" the unit on that date. (*Id.* at 71–72.) Orchard Ridge could not transfer possession of the unit to her at that time, because Orchard Ridge itself did not yet have possession. (*Id.* at 49–50.) Since Baker did not have possession of the unit on April 11, her obligations under her Residence and Services

---

[6] Hartford denies that Shockey "actually locked down Area [E] on April 11, 2013." (Dkt. No. 51 at 4.)

[7] If such a button does in fact exist on the door to Unit 335, there is no evidence in the summary judgment record that Baker or the Help U Move employees knew about it on April 11, 2013.

Agreement, which included making certain monthly payments, had not yet started.  (*Id.* at 48–49.)[8]

The Help U Move employees were not deposed.  In virtually identical affidavits, however, they state that they arrived at Orchard Ridge at 10:45 a.m. on April 11 and that they left at 6 p.m.  (Dkt. No. 48–5 at 1–3.)  They further state that they "did not place any cardboard boxes on top of the oven" or "touch or see that the oven was on during the entire move."  (*Id.*)  When asked at her deposition whether it would surprise her to learn that the employees deny putting a box on the stove, Baker answered "No," remarking: "Who is going to say, 'I did it'?"  (Dkt. No. 48–4 at 39.)

**E.  Baker moves for summary judgment.**

Baker now moves for summary judgment.  (Dkt. No. 46, Baker's Mot. for Summ. J. 1.)  She argues that there is no evidence that she was negligent, let alone that her negligence caused the fire.  (Dkt. No. 48 at 9–13.)  To support her motion, Baker produces various materials, including depositions and affidavits.  (Dkt. Nos. 48–1 through 48–6.)

Hartford opposes Baker's motion, arguing that there is an issue of material fact as to whether Baker placed the boxes on top of the stove or turned it on.  (Dkt. No. 50, Hartford's Mem. in Opp'n 10–11.)  Hartford also claims that there is sufficient evidence for a reasonable jury to conclude that Baker breached her duties to use ordinary care, to ensure that no dangerous conditions existed in Unit 335, and to supervise the Help U Move employees.  (*Id.* at 11–13.)  Hartford does not produce any materials to support its opposition.  Instead, it relies on Baker's materials.

---

[8] Baker's Residence and Services Agreement is not a part of the summary judgment record.

9

## II. STANDARD OF REVIEW

In accordance with Rule 56, the court must grant Baker, the moving party, summary judgment if she shows that there is no genuine dispute as to any material fact and that she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material only if it could affect the outcome of the case. *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). And a genuine dispute of a material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of Hartford, the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

In determining whether a genuine dispute of material fact exists, the court "view[s] the facts and draw[s] all reasonable inferences in the light most favorable to [Hartford]." *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). Hartford cannot, however, rely on "'mere allegations or denials of [its] pleadings'" to defeat summary judgment. *Id.* (quoting *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)). Nor can it "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586 (1986). Instead, it "must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The court must also grant Baker summary judgment if Hartford "fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a scenario,

> there can be "no genuine issue as to any material fact," since a complete failure of
> proof concerning an essential element of the nonmoving party's case necessarily
> renders all other facts immaterial. The moving party is "entitled to a judgment as
> a matter of law" because the nonmoving party has failed to make a sufficient

showing on an essential element of her case with respect to which she has the burden of proof.

*Id.* at 323. Accordingly, Baker "need not produce evidence [to prevail], but simply can argue that there is an absence of evidence by which [Hartford] can prove [its] case." *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393 (4th Cir. 1994); *see also Celotex*, 477 U.S. at 325 ("The burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.").

Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). Hence, the court has an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

III. DISCUSSION

**A. Virginia law governs Hartford's claims.**

Because its jurisdiction over this case rests on diversity of citizenship, the court must apply the substantive law of Virginia, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), including its choice-of-law rules, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). In matters of tort, Virginia applies the doctrine of *lex loci delicti*—or the law of the place of the wrong—to choice-of-law questions. *Dreher v. Budget Rent-A-Car Sys., Inc.*, 634 S.E.2d 324, 327 (Va. 2006). Here, Hartford alleges that the wrong occurred in Virginia, so Virginia law governs its claims.

11

**B. Hartford lacks sufficient evidence to prove that Baker was negligent.**

In Virginia, "[n]egligence cannot be presumed from the mere happening of an accident." *Bare v. Jones*, 147 S.E.2d 145, 147 (Va. 1966). Rather, a plaintiff must produce evidence showing "the existence of a legal duty, a breach of that duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003). The evidence produced must establish "more than a probability of negligence and any inferences therefrom must be based on facts, not on presumptions. It is incumbent on the plaintiff . . . to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover." *Bare*, 147 S.E.2d at 147.

"[T]he issue whether a legal duty in tort exists is a pure question of law." *Lasley v. Hylton*, 764 S.E.2d 88, 90 (Va. 2014). "Issues of negligence and proximate causation ordinarily are questions of fact for the jury's determination." *Jenkins v. Payne*, 465 S.E.2d 795, 799 (Va. 1996)). They "become questions of law for the court," however, when reasonable persons "could not disagree on the facts and inferences drawn therefrom." *Jordan v. Jordan*, 257 S.E.2d 761, 762 (Va. 1979).

*(1) Baker did not breach her ordinary duty of care.*

Under "[g]eneral negligence principles," one must exercise due care to avoid causing injury to another or his property. *RGR, LLC v. Settle*, 764 S.E.2d 8, 16 (Va. 2014). As the Supreme Court of Virginia has explained:

> [W]henever one person is by circumstances placed in such a position with regard to another . . . that if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or the property of the other, a duty arises to use ordinary care and skill to avoid such injury.

12

*Id.* (alteration and omission in original) (quoting *S. States Grain Mktg. Coop. v. Garber*, 139 S.E.2d 793, 796 (Va. 1965)).  Ordinary care is "that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury to another." *Griffin v. Shively*, 315 S.E.2d 210, 212–13 (Va. 1984) (quoting *Perlin v. Chappell*, 96 S.E.2d 805, 808 (Va. 1957)).

Here, Baker concedes that she owed this duty on April 11, 2013, but argues that Hartford lacks sufficient evidence to prove that she breached it.  (Dkt. No. 48 at 9–10; Dkt No. 53, Baker's Reply Mem. in Supp. of Mot. for Summ. J. 6–7.)  Hartford responds that there is a material issue of fact as to whether Baker breached the duty, because a reasonable jury could conclude from the evidence that she placed the boxes on an operating stove.  (Dkt. No. 51 at 10–11.)  In support of this assertion, Hartford first submits that the evidence shows that Baker and the Help U Move employees were the only ones to enter Unit 335 after 10 a.m. on April 11 and so "it is more likely than not that either . . . Baker or . . . Help U Move placed the boxes on the operating stove."  (*Id.* at 10.)  Hartford further maintains that the evidence establishes that Baker was in the unit for roughly eight hours and thus had "ample time" to place the boxes on top of the stove "without the presence" of the Help U Move employees.  (*Id.* at 11.)

The court agrees with Baker that Hartford lacks sufficient evidence to show that she breached her duty to use ordinary care.  Hartford does not have any evidence that she moved the boxes into Unit 335 or moved them around once they had been placed in the unit.  Nor does it have any evidence that the stove was on while she was in the unit.  Indeed, it does not have any evidence that she even entered the kitchen on April 11.

Hartford recognizes this absence of evidence, but contends that Baker could be lying about not entering the kitchen and not placing the boxes on the stove.  It does not, however, offer

13

any evidence that would give a reasonable jury cause to question her credibility. For instance, Hartford points to no evidence suggesting—much less demonstrating—a conflict between Baker's version of events and the Help U Move employees'. Baker says that she did not enter the kitchen, move the boxes, or see any of them on top of the stove; and the employees do not contradict her. On the contrary, they support her account of what happened: they confirm that they were the ones who moved the boxes into the kitchen—not she—and that they did not place any of them on the stove.

Moreover, contrary to Hartford's argument, it is possible that neither Baker nor the Help U Move employees are lying. Roughly two hours passed from the time that they left Unit 335 together on April 11 to the time the fire department responded to the fire alarm. And for at least a portion of that time, the unit was unlocked, open to anyone else in the building. So it is possible that a Shockey employee entered the unit and while doing work, placed the boxes on the stove or turned it on. After all, Shockey was in the process of preparing Unit 335 and others in Area E for their final inspections, which were scheduled for the following day, April 12. It is also possible that another resident entered Unit 335 and while snooping around, placed the boxes on the stove or turned it on. Regardless of whether these scenarios are more or less likely than those involving Baker and the Help U Move employees, the point is the same: Hartford has failed to produce sufficient evidence to show that Baker or the Help U Move employees, and not an unknown third party, placed the boxes on the stove or turned it on.

But even if Hartford could narrow the possible tortfeasors to only Baker and the Help U Move employees, it still would lack sufficient evidence to prove that Baker was negligent. The Supreme Court of Virginia has long held that where, like here, the plaintiff relies on circumstantial evidence to establish negligence, it "must show more than that the accident

14

resulted from one of two causes, for one of which the defendant is responsible and for the other of which he is not." *Cooper v. Whiting Oil Co.*, 496 S.E.2d 757, 761 (Va. 1984); *see also Page v. Arnold*, 314 S.E.2d 57, 61 (Va. 1984) ("In order for a plaintiff to establish a *prima facie* case of negligence, the evidence must show more than that the accident resulted from one of two causes, for one of which the defendants are responsible and for the other of which they are not."). If the plaintiff fails to produce sufficient evidence to show "within a reasonable degree of certainty" that the defendant is responsible for the cause of his damages, then he cannot recover. *Cooper*, 496 S.E.2d at 761.

Here, as discussed in more detail below, Baker is not responsible for any negligence of Help U Move and its employees because Help U Move was not her agent, but rather an independent contractor. Moreover, Hartford has failed to show that Help U Move or its employees were negligent, thus barring any claim for negligent supervision. To prevail against Baker, then, Hartford must establish within a reasonable degree of certainty that she placed the boxes on the stove or turned it on, and not the Help U Move employees. Hartford falls well short of meeting this burden. Indeed, it concedes that it cannot show who—Baker or the Help U Move employees—caused the fire: "[I]t is more likely than not," Hartford submits, "that *either* Defendant Baker or Defendant Help U Move place the boxes on the operating stove." (Dkt. No. 51 at 10 (emphasis added).)

In cases where, as here, there is an absence of evidence as to the cause of the accident at issue, the plaintiff will often resort to the doctrine of *res ipsa loquitur*, which "raises a presumption or permits an inference of negligence." *Lewis v. Carpenter Co.*, 477 S.E.2d 492, 494 (Va. 1996). Though much of its argument here rings of *res ipsa loquitur*—*e.g.*, "[Baker] had ample time in the Unit [during which she] could have placed a box in the kitchen on top of

15

the stove" (Dkt. No. 51 at 11)—Hartford made clear at oral argument that it was not invoking the doctrine. In any event, *res ipsa loquitur* has no application here. To begin with, "[t]he doctrine rests upon the assumption that the *thing* which causes the injury is under the exclusive management of the defendant." *Logan* v. *Montgomery Ward & Co.*, 219 S.E.2d 685, 688 (Va. 1975) (quoting *Peters v. Lynchburg Traction Co.*, 61 S.E. 745, 746 (Va. 1908)). In this case, the evidence shows that the things that caused the damage—the boxes and the stove—were not under Baker's exclusive control. On the contrary, the Help U Move employees (and perhaps many others) also had access to the boxes and the stove. In fact, the evidence is that only the employees entered the kitchen on April 11 during the move. And as for after the move, the evidence is that the unit was unsecured and other persons were at Orchard Ridge's main building.

Further, *res ipsa loquitur* is inapplicable "in the case of an unexplained accident that may have been attributable to one of two causes, for one of which the defendant is responsible." *Lewis v. Carpenter Co.*, 477 S.E.2d 492, 494 (Va. 1996). Here, as just discussed, Hartford cannot establish whether Baker or the Help U Move employees caused the fire, and she is not responsible for their negligence.

So even if Hartford were relying on *res ipsa loquitur* to make up for its lack of evidence, the doctrine would be of no avail.

As noted above, Hartford, as the plaintiff, bears the burden of producing sufficient evidence to establish more than the probability of Baker's negligence; it must show why and how the fire happened. *Bare*, 147 S.E.2d at 147. Instead of offering such evidence, Hartford leaves "the cause . . . to conjecture, guess, or random judgment." *Page*, 314 S.E.2d at 61. Because of this lack of evidence, the court is convinced that reasonable persons could not differ

16

as to whether Baker was negligent. The court therefore holds that she is entitled to a judgment as a matter of law on Hartford's negligence claim based on her alleged failure to exercise ordinary care.

### (2) Baker did not owe a heightened duty of care.

In addition to or as part of a duty to use ordinary care, Hartford claims that Baker had "a duty of care to . . . Orchard Ridge to ensure that there were no dangerous conditions in [Unit 335],"[9] and that she breached it by failing to confirm that "no boxes were placed on the stove and/or that the stove's burners were in the off position" when she left the unit on April 11, 2013 (Dkt. No. 51 at 9–12). Baker argues that this duty goes beyond her common-law duty to exercise ordinary care and that there is no factual or legal basis for imposing it on her in this case. (Dkt. No. 48 at 10 n.1; Dkt. No. 53 at 7–9.) The court agrees with Baker.

As noted above, the common law requires a person to use ordinary care so as not to cause injury to another or his property. But Hartford does not cite, and the court is not aware of, any authority holding that the common law also obliges a person who—like Baker—has no ownership or possessory interest in a property, to ensure that no dangerous conditions exist in that property before leaving it.[10] This is a heightened duty of care that does not arise from the common law.

---

[9] In its complaint, Hartford (expressly or implicitly) alleges that Baker owed three different duties: (1) a duty to use Unit 335 in a manner that would not pose a foreseeable risk of danger; (2) a duty to secure the unit against a foreseeable risk of danger; and (3) a duty to maintain the unit in a reasonably safe condition. (*See* Dkt. No. 1, Compl. ¶¶ 20, 21(a)–(b).) It does not address these duties in its opposing memorandum. (*See* Dkt. No. 51 at 9–12.) Instead, without explanation, it combines them into one—the duty to ensure that no dangerous conditions existed in the unit. (*Id.*) For purposes of Baker's motion, it does not matter whether Hartford's claim is based on one, two, or three duties because Baker owed no more than the common-law duty to use ordinary care, which, as discussed above, Hartford cannot prove she breached.

[10] The common law, of course, imposes this and other related duties on owners and possessors of property. Such duties include duties to inspect the property and maintain it in a reasonably safe condition. *RGR, LLC v. Settle*, 764 S.E.2d 8, 32 (Va. 2014) (McClanahan, J., dissenting) ("Common law imposes a duty of inspection, maintenance and upkeep of property on the individual who *possesses* the property." (emphasis added)); *Volpe v. City of Lexington*, 708 S.E.2d 824, 827 (Va. 2011) ("In Virginia, a *landowner* owes an invitee the duty of using ordinary

17

Nonetheless, Hartford contends that Baker owed the duty because she testified at her deposition that "prior to leaving any previous property she owned, she would ensure all appliances were not in the operating position." (Dkt. No. 51 at 11.)[11] This admission, Hartford reasons, demonstrates that Baker "understood it to be a reasonable exercise of due care to ensure all appliances were in the off position prior to leaving a property." (*Id.* at 11.)

This argument is unavailing. For starters, negligence is determined by an objective, not a subjective, standard: how would an ordinarily prudent person have acted under the same or similar circumstances? *Griffin*, 315 S.E.2d at 212–13. In this case, then, the inquiry is not whether Baker would make sure all appliances were turned off before leaving a property, but rather whether an ordinarily prudent person would. No such person would think himself required to ensure that appliances he did not use or see in use were turned off prior to leaving a property that he did not own or possess. Indeed, an ordinarily prudent person would likely find it bizarre if another visited his home and before leaving, went from room to room confirming that appliances the other did not use or see in use were turned off.

Further, while it is true that a person may assume a duty of care that goes above what the common law requires, the fact that Baker would ensure that all appliances were turned off before

---

care to maintain its premises in a reasonably safe condition and to warn . . . of any hidden dangers." (omission in original) (emphasis added) (internal quotation marks and citation omitted)). The Virginia Code also imposes these and similar duties on tenants. Va. Code § 55–225.4(A) (requiring a tenant to (among other things) "[k]eep that part of the premises that he occupies and uses as clean and safe as the condition of the premises permit" and to "[u]se in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air-conditioning and other facilities and appliances"). None of these duties are applicable here, however, because Baker was *not* an owner or a tenant at Orchard Ridge on April 11, 2013, and therefore had *no* "right to occupy, use, or otherwise enjoy" Unit 335 on that date. (Dkt. No. 48–1 at 71–72.)

[11] Baker's actual testimony was not so sweeping:

> Q       But, in your previous residence, did you *ever* make sure that all the appliances are off and turned off, anything of that sort?
>
> A       Well, of course. Of course.

(Dkt. No. 48–4, Baker Dep. 25, May 7, 2015 (emphasis added).).

18

leaving her previous properties does not establish that she undertook such a duty here. Under the assumption-of-duty principle,

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> > (a)     his failure to exercise such care increases the risk of such harm, or
>
> > (b)     the harm is suffered because of the other's reliance upon the undertaking.

*Kellermann v. McDonough*, 684 S.E.2d 786, 791 (Va. 2009) (internal quotation marks and citation omitted).

Here, Hartford lacks sufficient evidence to prove even the first of these elements. It has no evidence that Baker undertook to confirm that all appliances in Unit 335 were turned off before leaving on April 11, and that she recognized or should have recognized that such an undertaking was necessary to protect the unit. It thus cannot establish that she assumed a duty to make sure that all appliances in the unit were turned off prior to leaving.

In short, Hartford has failed to produce sufficient evidence to show that Baker owed a duty to ensure that no dangerous conditions existed in Unit 335 on April 11. The court therefore concludes that she is entitled to judgment as a matter of law on Hartford's negligence claim based on her alleged failure to confirm that no boxes were on the stove and that it was turned off before leaving the unit on that date.[12]

---

[12] But even if Hartford could establish that Baker had a duty to ensure that no dangerous conditions existed in Unit 335 on April 11, 2013, the court would nevertheless rule in her favor on this claim because Hartford lacks sufficient evidence to prove that she breached the duty. Hartford has no evidence showing that the boxes were on the stove or that it was turned on when she and the Help U Move employees left the unit on that date. Without such evidence, Hartford could not establish that her alleged failure to ensure that no boxes were on the stove and that it was turned off was the proximate cause of the fire.

19

### (3) Baker did not owe a duty to supervise the Help U Move employees, but even if she did, Hartford lacks sufficient evidence to prove that Help U Move or its employees were negligent.

Lastly, Hartford alleges that Baker had a duty to supervise the Help U Move employees while they were moving the boxes into Unit 335 on April 11, 2013 (Dkt. No. 1, ¶ 21(c)), and that she breached that duty by failing "to ensure . . . no boxes were placed on an operating stove prior to leaving" the unit on that date (Dkt. No. 51 at 13). Hartford made clear at oral argument that this claim is based on a theory of direct, as opposed to vicarious, liability, but admitted that its theory of direct liability still requires underlying negligence on the part of the agent as an element of liability.[13]

Baker responds that she owed no duty to supervise the Help U Move employees because Help U Move was not her agent; rather, it was an independent contractor. (Dkt. No. 48 at 11–13; Dkt. No. 53 at 9–12.) She also asserts that, even if Hartford could prove that Help U Move was her agent, there is no evidence that Help U Move or its employees were negligent, let alone that their negligence caused the fire. (Dkt. No. 48 at 12–13; Dkt. No. 53 at 11 n.6.)

The court agrees with Baker. Under Virginia law, an agent is one who is authorized to act on behalf of another (the principal) and is subject to his control. *Murphy v. Holiday Inns, Inc.*, 219 S.E.2d 874, 875 (Va. 1975). By contrast, "[a]n independent contractor is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result." *S. Floors & Acoustics, Inc. v. Max-Yeboah*, 594 S.E.2d 908, 911 (Va. 2004) (quoting *Craig v. Doyle*, 19 S.E.2d 675, 677 (Va. 1942)). A person who hires an independent contractor "ha[s] no duty to supervise the means and method of the [contractor's] work and cannot be found independently negligent for failing to do so." *Id.* at 912.

---

[13] As a result of this theory and admission, Hartford has placed the negligence of Help U Move and its employees directly at issue in Baker's motion.

"The criterion for determining whether a relationship is one of principal-agent . . . , on the one hand, or [customer-]independent contractor on the other, is control or right to control the methods or details of doing the work, not control of the results." *Wells v. Whitaker*, 151 S.E.2d 422, 429 (Va. 1966). If the person for whom the work is being done may determine not only the result of the work, but also the method by which the other does the work, then the relationship is one of principal-agent. *See S. Floors & Acoustics*, 594 S.E.2d at 911. But if the person may determine only the result, and the other may use whatever method he chooses to accomplish that result, then the relationship is not one of principal-agent, but rather of customer-independent contractor. *See id.*

In general, whether a person is an agent or independent contractor is a question of fact for the jury's determination. *See Hadeed v. Medic-24, Ltd.*, 377 S.E.2d 589, 594 (Va. 1989); *Drake v. Livesay*, 341 S.E.2d 186, 189 (Va. 1986). When the evidence points to just one conclusion, however, the question is one of law for the court. *See Hadeed*, 377 S.E.2d at 594; *Drake*, 341 S.E.2d at 189.

Here, Hartford concedes that "Baker did not control the method of movement of the furniture from her previous residence to [Unit 335]." (Dkt. No. 51 at 12.) It nonetheless argues that Help U Move was her agent, and thus she had a duty to supervise its employees, because she "had control of the placement of the furniture within" the unit. (*Id.*)

To be sure, Baker told the Help U Move employees where to put the furniture in Unit 335. (Dkt. No. 48–4 at 18.)[14] But that fact alone does not make Help U Move her agent. As noted above, a person may direct the result of another's work without becoming his principal; the person just cannot direct the method that the other uses to accomplish that result. So Baker could

---

[14] Hartford does not argue that Baker told the Help U Move employees where to place the boxes (*see* Dkt. No. 51 at 12–13), and the evidence in the summary judgment record establishes that she did not (Dkt. No. 48–4 at 19).

tell Help U Move and its employees where to place the furniture (the result) without becoming Help U Move's principal; she just could not tell Help U Move and its employees how to go about placing the furniture (the method). If this were not the case, then anytime a person hired a moving company and told it and its employees where to place his belongings, he would become the company's principal, thereby opening himself to liability for torts committed by the company and its employees during the move. *See Sanchez v. Medicorp Health Sys.*, 618 S.E.2d 331, 334 (Va. 2005) ("In Virginia, the doctrine of *respondeat superior* imposes tort liability on an employer for the negligent acts of its employees, *i.e.*, its servants, but not for the negligent acts of an independent contractor."); *Allen Realty Corp. v. Holbert*, 318 S.E.2d 592, 596 (Va. 1984) ("[A] principal is liable to third persons for wrongful acts an agent commits within the scope of his employment . . . ."). The court refuses to adopt such an expansive view of agency law in Virginia.

Because Baker did not control the method that Help U Move and its employees used to move her belongings, the relationship between them was not one of principal-agent, as Hartford argues, but rather of customer-independent contractor. As a result, she had no duty to supervise the Help U Move employees "and cannot be found independently negligent for failing to do so." *S. Floors & Acoustics*, 594 S.E.2d at 912.

Further, even if Help U Move was found to be Baker's agent for purposes of moving her belongings into Unit 335, there is no evidence that the Help U Move employees "place[d] the boxes on an operating stove prior to leaving [the unit]." (Dkt. No. 51 at 13.) As Hartford conceded at oral argument, a claim for negligent supervision, if recognized by Virginia at all, requires underlying negligence on the part of the agent. Affidavits from the Help U Move employees, apparently obtained by Hartford, show that they did not place the boxes on the stove,

touch the stove at any time during the move, or see the stove turned on.  For the same reasons that Hartford cannot prove negligence on the part of Baker, it cannot prove negligence on the part of Help U Move or its employees.  (*See* discussion *supra* Part III.B.1.)

The court therefore holds that Baker is entitled to judgment as a matter of law on Hartford's negligence claim based on her alleged failure to supervise the Help U Move employees.  The court further holds that Hartford, after placing the negligence of Help U Move at issue in Baker's motion, lacks sufficient evidence to establish that Help U Move, through its employees, was negligent.

## IV. CONCLUSION

For the foregoing reasons, the court will grant Baker's motion for summary judgment and enter judgment in her favor.

An appropriate order will be entered.

Entered: July 16, 2015

*Elizabeth K. Dillon*
United States District Judge